# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-cr-00248-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| ADAM PACHECO, | |
| Defendant. | |

## I.  INTRODUCTION

Before the Court is Defendant Adam Pacheco's Motion to Dismiss (ECF No. 117), the Government's Motion to Strike (ECF No. 155), and Defendant Pacheco's Motion to Admit (ECF No. 157). For the reasons below the Court denies Motion to Dismiss and Motion to Admit; and grants the Motion to Strike.

## II.  RELEVANT PROCEDURAL BACKGROUND

Defendant Adam Pacheco and his co-defendant, Harolyn Landau, were charged by indictment on October 1, 2019 with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; six counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; one count of conspiracy to money launder in violation of 18 U.S.C. § 1956(h); five counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2; and one count of conspiracy to structure in violation of 31 U.S.C. § 5324(a)(1) & (d)(1). ECF No. 1.

On September 16, 2022, Harolyn Landau entered into a plea agreement with the Government, pleading guilty to Count 1. See ECF No. 93. On March 8, 2023, the Government filed a superseding indictment against Adam Pacheco only. ECF No. 108. The superseding indictment does not alter the original charges. It does, however, expand the period of the conspiracy by an

additional six years—covering the years 2000-2019.[1] On March 31, 2023, Mr. Pacheco filed a motion to dismiss the superseding indictment. ECF No. 117. The motion was based on Mr. Pacheco's claims under the Sixth Amendment Right to a Speedy Trial, Fifth Amendment Due Process, and the Court's Supervisory Powers. On April 30, 2023 and May 4, 2023, the Court held an evidentiary hearing on the motions. On January 12, 2023, the Court held a calendar call, where it denied as moot the Government's Motion to Compel Reciprocal Discovery (ECF No. 116). ECF No. 180.

### III.   FACTUAL FINDINGS

The Court makes the following factual findings based upon its assessment of the testimony provided at the evidentiary hearing, including credibility, as well as its assessment of the other documentary evidence admitted to the record at the hearing.

   a.   *SARs and initial contact with Mr. Pacheco*

Special Agent Matthew Schaefer joined IRS Criminal Investigations in February of 2010. Between January 2015 and March 2018, Special Agent Schaefer served on a DEA task force that was established to investigate money laundering violations related to drug trafficking. In approximately July or August of 2017, while serving on the task force, Agent Schaefer received more than four Suspicious Activity Report ("SARs") concerning unusual transactions occurring between Mr. Pacheco and Ms. Landau. Specifically, Agent Schaefer observed that funnel accounts had been set up in Oregon and California; funds from these funnel accounts were being transferred to Landau and Landau was then cashing checks in amounts less than $10,000 and depositing these funds into Pacheco's account, usually in amounts under $10,000.

Because the checks and deposits were generally under $10,000, Agent Schaefer suspected that Landau and Pacheco were attempting to avoid currency transaction reports and that the unusual banking activity was related to drug trafficking proceeds. Between July or August of 2017 and September 25, 2017, Agent Schaefer took several steps to investigate the transactions further. He subpoenaed Pacheco and Landau's flight records, ran Pacheco and Landau's phone numbers

---

[1] The initial time period for the conspiracy spanned from 2005 to 2018. ECF No. 1.

through DEA databases, and conducted surveillance of Landau. Through this investigation, Agent Schaefer learned that Pacheco was frequently travelling to Hawaii, California, Florida, and Oregon. He also learned that Landau was taking flights from Los Angeles to Las Vegas, staying for a short time and then flying back to Los Angeles the same day. Through his surveillance of Landau, Agent Schaefer also observed Landau hand a thick white envelope to Pacheco at a casino in Las Vegas. Schaefer additionally learned that Pacheco was in contact with an individual that was in frequent contact with another individual that was distributing methamphetamine to Hawaii.

Agent Schaefer's findings corroborated his suspicions that the source of the proceeds moving between Landau and Pacheco was drug trafficking, and on September 25, 2017, Agent Schaefer created a request for a primary investigation into Pacheco, whom he considered a "person of interest." The purpose of the primary investigation was to investigate money laundering related to drug trafficking. This request was approved on September 25, 2018. Between September 25, 2018, and January 26, 2018, Agent Schaefer conducted a primary investigation of Pacheco. During this time, Schaefer followed up with individuals who were identified in the SAR reports and other banking information he had received. This included reaching out to Pacheco.

In January 2018, Agent Schaefer received oral authorization from his supervisor, Dallas Dobbs, to conduct a "knock and talk" with Pacheco. On January 26, 2018, Agent Schaefer went with Attorney General Investigator Chris Klein to Pacheco's residence to carry out the "knock and talk." Pacheco was not at home, but Agent Schaefer was able to speak with Pacheco's mother. Agent Schaefer identified himself to Pacheco's mother as a special agent with IRS Criminal Investigations and Klein introduced himself as a task force officer with IRS Criminal Investigations. Agent Schaefer left his contact information, which he wrote down on the back of Klein's business card, with Pacheco's mother and requested that Pacheco call him.

Pacheco called Agent Schaefer back fifteen minutes later. Schaefer put him on speaker phone with Klein, whom he introduced to Pacheco as well. During the call, Schaefer asked Pacheco if he could come to the IRS office in Las Vegas to meet in person. However, Pacheco wanted to continue the conversation by phone. Agent Schaefer asked Pacheco about the source of the funding and cash he had received in his accounts from Landau. Pacheco explained that the transfers were

repayments of loans he had provided to Landau and that the other funds in his account came from his gambling proceeds and consulting income. Schaefer and Pacheco did not discuss Pacheco's role in the investigation during this call. Thus, Agent Schaefer did not inform Pacheco that he was a subject or a target of an investigation. He also did not represent that Pacheco was solely a witness to any criminal activity. At the end of the call, Pacheco told Schaefer that he would speak with his Certified Public Account ("CPA") and meet Schaefer and Klein in the near future. The next day, Schaefer sent an email to Pacheco and copied Klein, asking Pacheco to provide loan documentation in order to verify the source of money that initially funded these loans to Landau. The email also made a general request for "recent financial activity, work history, associates, and all information you're willing to provide about individuals that are providing you cash."

   b. Contact with Mr. Mesnick

  Michael Mesnick is Certified Public Account ("CPA") residing in Los Angeles, California. Mr. Mesnick worked as revenue agent with the IRS from 1965 to 1969. He has been Pacheco's CPA since 2008. Pacheco called Mesnick not long after his phone conversation with Agent Schaefer. Pacheco informed Mesnick that Schaefer had left a note at his home. Mesnick called the Office of the Taxpayer Advocate and confirmed that Agent Schaefer was an agent with IRS Criminal Investigations. Mesnick also read the January 27, 2018 email that Schaefer sent to Pacheco. Mesnick advised Pacheco that they should cooperate with Schaefer "to the extent he is asking for information." After securing power of attorney from Pacheco, Mesnick called Agent Schaefer on February 5, 2018, who explained to Mesnick that there was "very strange activity" in Pacheco's bank accounts "with substantial wire transfers coming in." Agent Schaefer told Mesnick that a woman named Harolyn Landau had been making these transfers into Pacheco's bank account. He also informed Mesnick that these types of transfers had the "badge of trafficking" because they were coming from Oregon and Arizona. Agent Schaefer asked Mesnick about the source and reasons behind the suspicious transfers.

  During this phone call, Schaefer told Mesnick that Pacheco was a "party or person of interest." Schaefer never told Mesnick he was only looking at Harolyn Landau; nor did he represent to Mesnick that he was not looking at Pacheco. At all times during the call, Mesnick understood

that Schaefer was employed by Las Vegas IRS Criminal Investigation. Agent Schaefer never led Mesnick to believe that he was with another division of the IRS. Mesnick understood that he was not legally required to answer any of Agent Schaefer's questions. However, he continued to answer Agent Schaefer's questions because he felt that it was in Pacheco's best interest to cooperate.

Mesnick spoke with Agent Schaefer again on February 14, 2018 where they continued their conversation about the source of funds in Pacheco's account. Mesnick faxed over documents to Agent Schaefer on February 15, 2018 in order to address Schaefer's questions about the source of cash and transfers. The documents consisted of declarations of Harolyn Landau in which she asserted that the transfers were loans from her to Pacheco; the loans dated back to 2008 and were in excess of $5 million; and the loans were due and payable on December 31, 2021. The facsimile also contained documents providing explanations for several trips that Pacheco had gone on, which Schaefer had appeared concerned with. Schaefer did not demand this information, nor did he make any threats to Mesnick regarding what might happen if Mesnick did not provide this information. During one of these phone calls, Mesnick asked Agent Schaefer about the source of his authority for inquiring into these matters. In response, Schaefer provided him with parts of the code dealing with trafficking, Title 18.

On February 26, 2018, Mesnick sent a letter to Agent Schaefer that contained copies of Pacheco's filed tax returns from 2010 to 2017. None of these tax returns reflected any taxable income. While the tax returns showed gambling proceeds offset by gambling losses, they did not report any income from consulting.

    c.   Contact with Other Witnesses

Schaefer reached out to other witnesses connected to the SARs information, including a woman named Maria McNeil and Landau's son, Jason Landau. McNeil informed Schaefer that she had provided money to Landau based on Landau's representations that she had rights to a computer software program and needed funds to pay for lawyers who would facilitate the release of a $50 million payout. Jason Landau told Schaefer that the money being deposited into Pacheco's account was related to an encryption software technology that was going to be installed in Thai banks. Jason Landau explained that Pacheco had the rights to this software and was owed a $60

million payout. Like McNeil, Jason Landau stated that his mother was recruiting individuals to give her loans or investment money, which was to go towards attorneys and individuals in Thailand in order to get this money released. Jason Landau informed Schaefer that he had met Pacheco in 2008. According to Jason Landau, Pacheco had presented Thai documents to him purporting to substantiate the encryption software and payout.

When reviewing Pacheco's bank account information, Schaefer did not see any expenditures going towards attorneys; rather Schaefer only saw large expenditures on flights, jewelry, and other personal matters. Both McNeil and Jason Landau informed Schaefer that there had been an FBI investigation into Landau in 2009. Schaefer reached out to an FBI agent in Los Angeles and requested the file. Based on these conversations and his review of the FBI file, Schaefer determined that the source of the proceeds was fraud instead of drug trafficking.

      d.  *Opening of Grand Jury Investigation*

Because fraud proceeds are taxable yet were not reported as taxable income on any of Pacheco's 2010-2017 tax returns, Schaefer along with his supervisor, Dallas Dobbs, approached the U.S. Attorney's Office to seek both a money laundering and tax investigation. On March 7, 2018, Agent Schaefer sought to open a Title 26 grand jury investigation into Pacheco. The grand jury investigation was approved on April 3, 2018 by Agent Schaefer's Assistant Special Agent in Charge ("ASAC"). Upon approval, the investigation ripened from a primary investigation into a subject criminal investigation.

      e.  *May 3, 2018 Meeting with Mesnick*

Mesnick advised Pacheco to obtain a lawyer and on May 3, 2018, Mesnick and Pacheco's attorney, Richard Stack, met with Agent Schaefer in person. Agent Schaefer was accompanied by another special agent, Special Agent David Mesler. Shortly into the meeting, Schaefer informed Mesnick and Stack that Pacheco was the subject of an open criminal investigation. Mesnick continued speaking with Agent Schaefer after learning this information. He believed that Stack would intercede and stop him from speaking if he began to say anything improper. Stack appears to have interceded once or twice but mostly took notes and allowed the conversation to continue. At this meeting, Mesnick provided additional information for the purpose of substantiating that

the transfers to Pacheco's bank account were in fact loans from Landau. Mesnick also provided documents concerning the technology projects that Pacheco was working on. Much of the conversation consisted of going through all that had previously been discussed with Pacheco and Mesnick.

Schaefer was disciplined for improperly accessing the Integrated Data Retrieval System ("IDRS") in 2010 and 2011 to view an acquaintance's information. However, no findings were ever made that he was not candid or did not provide truthful and honest answers.

Agent Schaefer's final recommendation for prosecution, which was submitted to the U.S. Attorney's Office, referenced the 2010-2017 tax returns obtained from Mesnick, statements that Pacheco gave during their January 26, 2018 phone call, statements made by Mesnick in the February 15, 2018 fax cover sheet, and Mesnick's statements from the May 3, 2018 interview. Pacheco is charged by indictment with one count of conspiracy to commit wire fraud; six counts of wire fraud; one count of conspiracy to money launder; five counts of money laundering; and one count of conspiracy to structure.

IV. **LEGAL STANDARD**

   a. **Outrageous Government Conduct**

"Outrageous government conduct occurs when the actions of law enforcement officers or informants are "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431–32 (1973). Dismissing an indictment for outrageous government conduct, however, is "limited to extreme cases" in which the defendant can demonstrate that the government's conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Stinson, 647 F.3d 1196,1209 (9th Cir. 2011) (internal quotation marks omitted). This is an "extremely high standard." United States v. Garza–Juarez, 992 F.2d 896, 904 (9th Cir.1993) (quoting United States v. Smith, 924 F.2d 889, 897 (9th Cir.1991)) (internal quotation marks omitted); United States v. Black, 733 F.3d 294, 302 (9th Cir. 2013).

There is no bright line dictating when law enforcement conduct crosses the line between

acceptable and outrageous, so "every case must be resolved on its own particular facts." Black, 733 F.3d at 302. But the Ninth Circuit has repeatedly emphasized that the "the due process channel which Russell kept open is a most narrow one." United States v. Simpson, 813 F.2d 1462, 1465 (9th Cir. 1987) (quoting United States v. Ryan, 548 F.2d 782, 789 (9th Cir. 1976).

Although it is outrageous for government agents to use "excessive physical or mental coercion" to convince an individual to commit a crime, United States v. McClelland, 72 F.3d 717, 721 (9th Cir. 1995), it is not outrageous to "use 'artifice and stratagem to ferret out criminal activity.'" Black, 733 F.3d at 302 (quoting United States v. Bogart, 783 F.2d at 1428, 1438 (9th Cir. 1986). Thus, this doctrine bars prosecution of defendants in "that slim category of cases in which the police have been brutal, employing physical or psychological coercion against the defendant." Simpson, 813 F.2d at 1465.

### b. Supervisory Powers

A court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." United States v. Bundy, 968 F.3d 1019, 1030 (quoting United States v. Struckman, 611 F.3d 560, 574 (9th Cir. 2010). "The court's exercise of its supervisory powers protects the integrity of the federal courts and prevents the courts from 'making . . . themselves accomplices in willful disobedience of law.'" Id. (quoting McNabb v. United States, 318 U.S. 332, 345 (1943)). "A district court can dismiss an indictment under its supervisory powers even if 'the conduct does not rise to the level of a due process violation.'" Id. (quoting United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991)). A court has several options when considering the exercise of its supervisory powers, including limiting evidence, witness testimony, or dismissing the indictment either with or without prejudice. However, a district court may dismiss an indictment with prejudice for government misconduct only if there is flagrant misbehavior and substantial prejudice. Id. Dismissal is only warranted when the "investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." Barrera-Moreno, 951 F.2d at 1092.

## V. DISCUSSION

### a. Motion to Dismiss

#### i. Outrageous government conduct

Defendant argues that IRS Agent Schaefer's actions in investigating this case support a finding of outrageous government misconduct, warranting dismissal of the superseding indictment. This Court disagrees. The Court finds that Agent Schaefer's conduct was not so extreme or outrageous as to violate a fundamental sense of justice. Agent Schaefer did not affirmatively mislead Mr. Mesnick or Mr. Pacheco. To the contrary, he identified himself to Mr. Pacheco and Mr. Mesnick that he was a Criminal Investigator with the IRS. He made it clear to Pacheco and Mesnick from the beginning that he was seeking information related to suspicious activity in Pacheco's accounts, both during their phone calls and through a follow up email that Mesnick was made aware of. He told Mesnick that Pacheco was a "party or person of interest." Mesnick's actions were in accord with this inquiry into Pacheco's own activities. For example, Mesnick sent Schaefer documentation in order to show that the source of the funds and various trips that Pacheco took were all legal. Schaefer explained to Mesnick that the "very strange" account activity had the "badge of trafficking" and that he was investigating under Title 18, a criminal statute. He never represented to Mesnick that he was only looking at Landau; nor that he was not looking at Pacheco. Agent Schaefer never made any threats to Pacheco or Mesnick about what would happen if they did not cooperate. There are no allegations of physical or mental coercion. In sum, these actions fall far short of constituting extreme and outrageous conduct. See Black, 733 F.3d at 302 (it is not outrageous to "use 'artifice and stratagem to ferret out criminal activity.'").

Defendant next contends that Agent Schaefer violated internal IRS procedures and that this alone warrants dismissal of the indictment. Defendant argues that Agent Schaefer violated the IRS manual in two key respects. First, he was not permitted to conduct a knock and talk of Pacheco or his accountant, Mesnick, during a primary investigation into Pacheco. Second, Schaefer had a duty to inform Pacheco and Mesnick of their constitutional rights to remain silent and have a lawyer during the non-custodial phone conversations pursuant to IRM sections 9.4.5.11.2 and

9.4.5.11.3.1. The Government disputes this, arguing that knock and talks are permitted in connection with a SAR General Investigation and a pure money laundering investigation. The Government further contends that the duty to inform an individual of their constitutional rights triggers only when the individual is the "subject" of an investigation, meaning a subject criminal investigation and not a primary investigation.

The Court again disagrees with Defendant. Where the remedy a defendant seeks is "not the invalidation of the agency action," but rather the "enforcement of agency regulations by means" of dismissal of a criminal indictment or the exclusionary rule, a court may not suppress evidence or dismiss a criminal indictment that has been obtained in violation of agency procedures unless the agency action violated the Defendant's statutory or constitutional rights. United States v. Carceres, 440 U.S. 741 (1979); United States v. Snowadzki, 723 F.2d 1427, 1430–31 (9th Cir. 1984) ("Absent unusual circumstances, the exclusionary rule does not apply when IRS agents violate internal regulations, without also infringing on constitutional or statutory rights."). Additionally, the due process clause may be implicated only if "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." Carceres, 440 U.S. at 752-53.

The Internal Revenue Manual is "not [a] code provision or regulation." Shwarz v. United States, 234 F.3d 428 (9th Cir. 2000). It "does not have the force of law and does not confer rights on taxpayers." Fargo v. Comm'r of Internal Revenue, 447 F.3d 706 (9th Cir. 2006); see also Schweiker v. Hansen, 450 U.S. 785 (1981) (holding that an agency manual "has no legal force" and "does not bind" the agency). Therefore, even if Defendant's contentions regarding IRS internal regulations are true, there was no violation of Defendant's statutory rights. Further, Defendant does not identify a specific IRS policy that he or Mesnick personally reasonably relied on with respect to their interactions with Schaefer. To the contrary, Mesnick understood based on his prior experience working for the IRS and over five decades of experience as a CPA that special agents like Schaefer investigate crimes; they do not conduct civil tax audits. For this reason, Defendant's reliance on the rule from in United States v. Tweel, 550 F.2d 297 (5th Cir. 1977) is misplaced. Tweel applies when an agent is collecting information for the purpose of a criminal investigation

under the auspices of a civil audit. From its inception, Agent Schaefer made clear, and Pacheco and Mesnick understood, that the investigation related to Pacheco's banking activity was criminal in nature. Therefore, <u>Tweel</u> is not relevant to the regulations or conduct at issue here. Finally, for the reasons explained below, Defendant fails to demonstrate a violation of his constitutional rights.

1. <u>Fifth Amendment</u>

First, Agent Schaefer's conduct did not violate the Fifth Amendment right against self-incrimination because Schaefer was under no constitutional obligation to inform Pacheco or Mesnick of their right to remain silent or have a lawyer present. Additionally, neither Pacheco nor Mesnick's statements were made involuntarily.

The Ninth Circuit has "repeatedly refused to extend Miranda beyond its stated limits," explaining that "[a]bsent custody in the conventional sense, we have declined to fault a government agent and reverse a conviction for failure to give a Miranda type warning unless the facts clearly demonstrated that the appellant was 'deprived of his freedom by the authorities in any significant way.'" <u>United States v. Robson</u>, 477 F.2d 13, 16 (9th Cir. 1973). Applying this rule in the IRS context, the United States Supreme Court held an IRS agent does not need to provide Miranda warnings to an individual under IRS investigation before questioning unless the individual was in custody or "special circumstances" were present "such as to overbear [the individual's] will to resist and bring about confessions not freely self-determined." <u>Beckwith v. United States</u>, 425 U.S. 341 (1976). Accordingly, "proof that some kind of warnings were given or that none were given would be relevant evidence only on the issue of whether the questioning was in fact coercive." <u>Id.</u> Pacheco and Mesnick were not in custody during the January and February phone calls. There are no facts suggesting additional "special circumstances" that would overbear Mesnick's or Pacheco's will or make their statements not freely determined. The conversations at issue all occurred over the phone. Mesnick understood that he was under no legal obligation to answer any of Agent Schaefer's questions. However, he continued to answer Agent Schaefer's questions because he felt that it was in Pacheco's best interest to cooperate.

For these same reasons, the Court finds that Pacheco's and Mesnick's statements were both voluntary. In determining the voluntariness of a confession, a court "examines whether a

defendant's will was overborne by the circumstances surrounding the giving of a confession." Doody v. Ryan, 649 F.3d 986, 1008 (9th Cir. 2011) (quoting Dickerson v. United States, 530 U.S. 428, 434 (2000)). "The due process test takes into consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." Id. (quoting Dickerson, 530 U.S. at 434). Courts examine several factors, including "the length of the questioning, the use of fear to break the suspect," and "the failure to advise the defendant of their right to remain silent and to have counsel present during custodial interrogation." Id. As described above, Agent Schaefer's phone conversations with Pacheco and Mesnick in January and February were not custodial interrogations so this third factor does not apply. As to the first two factors, there are no allegations that the conversations were particularly long or in any way unpleasant. It is further undisputed that Agent Schaefer never made any threats to either Pacheco or Mesnick or used any other kind of fear tactic.

Neither Pacheco nor Mesnick were deprived of their freedom, accordingly their statements were voluntary and Agent Schaefer was under no duty to inform Pacheco or Mesnick of their Miranda-type rights.

### 2. Fourth Amendment

Agent Schaefer's conduct did not violate the Fourth Amendment either because he did not make any affirmatively misleading statements and did not fail to answer any questions such that his silence would be deemed misleading.

A consent search is unreasonable under the Fourth Amendment if the consent to the search of records was induced by deceit, trickery or misrepresentation. Robson, 477 F.2d at 17–18. An IRS agent engages in deceit, trickery, or misrepresentation when they affirmatively mislead the taxpayer into believing that the investigation is exclusively civil in nature and will not lead to criminal charges. An agent's silence is misleading only if the Agent had "a legal or moral duty to speak or an inquiry left unanswered would be intentionally misleading." Id. ("we have consistently held that the failure of an IRS agent, be he Special or Revenue, to warn a taxpayer that an audit may have potential criminal ramifications does not render the search unreasonable.").

In Robson, a revenue agent's audit of a defendant's tax returns found that the defendant

had failed to report over $100,000 in income. The revenue agent referred the case to the Intelligence Division which resulted in the defendant's criminal prosecution. The taxpayer sought the suppression of the tax returns arguing that his consent to produce the records via his accountant, constituted deceit or trickery. The Ninth Circuit disagreed. First, the court found no affirmatively misleading statements because the agent never represented that his audit was "simply civil in nature." The panel also concluded that the agent's purported silence was not misleading because "[the agent] was under no duty to mention the possible criminal consequences of his audit, and the record disclose[d] no intimation that [the agent] was ever queried as to the scope of his investigation." Id. at 18. In United States v. Stringer, the Ninth Circuit applied Robson to an SEC investigation and similarly found no Fourth Amendment violation. The court concluded that the SEC agents had made no affirmative misrepresentations and had advised the defendants of the possibility of criminal prosecution through a disclaimer at the bottom of a standard form sent to Defendants which provided: "the Commission often makes its files available to other governmental agencies, particularly the United States Attorneys and state prosecutors." 535 F.3d 929 (9th Cir. 2008).

As in Robson and Stringer, there are no facts suggesting that Schaefer made any affirmatively misleading or false statements to Pacheco or Mesnick. As previously noted, Schaefer never represented that he was only looking into Landau or that he was not looking into Pacheco. Schaefer even told Mesnick that Pacheco was a "party or person of interest." There are also no facts suggesting that Pacheco or Mesnick were led to believe that Pacheco's tax filings were being audited or that Pacheco was subject to a purely civil investigation. Agent Schaefer never represented that he was conducting a civil tax audit or that he was even interested in the accuracy of Pacheco's tax returns. Agent Schaefer consistently represented that he was a special agent with IRS Criminal Investigations to Pacheco's mother, Pacheco, and Mesnick. Indeed, there was no need to inform Pacheco or Mesnick that this information may be used by the United States Attorneys because the very fact of Agent Schaefer's investigation alerted them to this possibility. Both Mesnick and Pacheco understood all along that Schaefer was part of IRS Criminal Investigations, that his job was to investigate crimes, and as part of that job, he was looking into

suspicious banking activity associated with Pacheco's account that appeared to be associated with criminal drug trafficking.

Pacheco likewise does not identify any questions that Schaefer failed to answer such that his silence or omission would be misleading. In fact, when Mesnick asked Agent Schaefer about the source of his authority for inquiring into Pacheco's banking activity, Schaefer provided him with names and titles of the criminal code pertaining to drug trafficking. Agent Schaefer was forthright in his request for documentation that would verify the source of the loans from Landau. Schaefer further made clear that his blanket request for financial activity, work history, and associates was all still related to learning more about the cash going into Pacheco's account. Mesnick's decision to mail Schaefer Pacheco's tax returns was part of a series of disclosures Mesnick made in an attempt to exonerate Pacheco from any possible criminal wrongdoing.

Therefore, Mesnick's consent to the search of Pacheco's records was not induced by Agent Schaefer's deceit, trickery, or misrepresentation.

### ii. Supervisory Authority

The Court finds no justification for the extreme measure of dismissing the indictment under its supervisory power. A dismissal of the indictment with prejudice is warranted only if the government engaged in flagrant misconduct that caused substantial prejudice. United States v. Ross, 372 F.3d 1097, 1109 (9th Cir.2004). At the outset, the Court notes that Schaefer's phone calls with Pacheco and Mesnick did result in some prejudice to Pacheco. For instance, Mesnick's explanation of the deposits into Pacheco's account—that they were loans to from Landau to Pacheco—was inconsistent with Pacheco's statement that the transfers were repayments to him based on loans he had made to Landau. Additionally, it is undisputed that Schaefer relied on the tax returns and conversations with Pacheco and Mesnick in his request for the Title 26 grand jury investigation. Whether the prejudice suffered was substantial is a closer question. Although the initial grand jury investigation arose out of both the tax returns and evidence of wire fraud obtained from witnesses and the 2009 FBI investigation, Pacheco was never ultimately indicted with any counts related to tax fraud. However, the Court need not resolve this question because it has already established that Agent Schaefer's conduct was not in clear violation of the IRS policies.

Accordingly, Pacheco has failed to show that the government engaged in flagrant misconduct.

Moreover, none of the "three legitimate bases," which would support the Court's use of its supervisory powers to craft a lesser remedy are present.[2] United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir. 1991). As explained, there is no constitutional or statutory violation to remedy. See Garza-Juarez, 992 F.2d at 905 ("[c]ourts do not have the authority to supervise out-of-court executive procedure in the absence of a constitutional or statutory violation."). Judicial integrity is not at stake as the facts present conduct of the executive branch that occurred well before any court proceedings began. Barrera–Moreno, 951 F.2d at1092 ("Judicial integrity is rarely, if ever, threatened by conduct outside of the courtroom."); Simpson, 927 F.2d at 1091 ("The supervisory power comprehends authority for the courts to supervise their own affairs, not the affairs of the other branches."). Finally, there is no need to deter future illegal conduct in this case as none of Agent Schaefer's actions were unlawful. Even if Agent Schaefer deviated from IRS internal policy, his conduct would not be illegal as the "Internal Revenue Manual does not hold the force of law." See Fargo, 447 F.3d at 713.

Accordingly, none of the facts warrant the Court's exercise of its supervisory powers in either dismissing the case or effecting a lesser remedy.

### b. Motions to Strike Exhibits A and C and Motion to Admit Exhibit C

The Court now turns to Defendant's Motion to Admit and the Government's Motion to Strike. Both motions relate to additional exhibits appended to Defendant's post-hearing briefing.

The Government's Motion to Strike objects to Defendant's Exhibits A and C because they were not admitted during the evidentiary hearing in violation of the Court's clear instruction that only evidence admitted during the hearing would be considered. Exhibit A is a facsimile sent from Agent Schaefer to Mesnick informing Mesnick that Agent Schaefer was investigating the unusual banking activity under Title 18. Exhibit C is an "Unsworn Declaration under Penalty of Perjury" of Retired Deputy Chief of Criminal Investigation Richard Speier. Defendant responds that the Court did allow them to move to admit the Declaration of Richard Speier (Exhibit C) and that

---

[2] The Court also notes that Defendant has not pointed to any evidence or testimony that he would have suppressed in substitution of an outright dismissal.

- 15 -

Pacheco's counsel was only made aware of the fax (Exhibit A) for the first time during the evidentiary hearing.

In addition to filing an opposition to the Government's Motion to Strike, Defendant also filed a Motion to Admit Exhibit C, the Declaration of Richard Speier. Defendant argues this testimony is essential under the Sixth Amendment, which mandates that defendants be able to confront those who testify against them; FRE 608(b) which allows cross-examination of witnesses with extrinsic evidence; and FRE 615(c) which bars the exclusion of "a person whose presence a party shows to be essential to presenting the party's claim or defense." The government responds that the Declaration attempts to usurp the Court's sole decision-making authority on the very questions pending relating to the motion to dismiss; the government was denied the opportunity to cross-examine Speier and therefore vet his qualifications to render an opinion; and allowing this document would necessitate permitting the government to submit additional declarations in response, therefore delaying the Court's ability to rule upon the pending motion.

### i. Exhibit A – The Fax

District courts have inherent power to control their own dockets, including the power "to determine what appears in the court's records" and to strike items from the docket to address conduct that is improper but does not warrant dismissal. Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404-05 (9th Cir. 2010). Whether to grant a motion to strike lies within the discretion of the district court. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010).

The Government is correct that the Court specifically directed the parties to introduce any evidence for the Court's consideration at the hearing. The Court does not find any reason for deviating from this clear command, especially because the fax does not provide additional evidence that is not already part of the record. It is already undisputed that Schaefer sent Mesnick the criminal codes, which provided authority for Schaefer's investigation. Therefore, the Court will grant the Government's Motion to Strike as it relates to Exhibit A.

### ii. Exhibit C –Declaration of Richard Speier

Contrary to the Government's allegations, although the Court declined to allow Speier to testify as an expert at the hearing, the Court did instruct Mr. Pacheco to file a motion to for leave

to admit Mr. Speier's declaration. However, the Court nonetheless declines to admit the Declaration as evidence. The Court does not find that the Declaration aids the Court in making its determination on the ultimate issue of law. The Court obtained ample information to determine whether Agent Schaefer violated internal IRS procedures.[3] Speier's Declaration does not identify any portion of the IRS manual, or any other written policy, outside of what Defendant has already provided to the Court through Defendant's briefing. More importantly, as the Court has already determined, whether Schaefer violated IRS internal procedures is not the dispositive issue in this case. The Court will therefore grant the Government's Motion to Strike as it relates to Exhibit C and deny Defendant's Motion to Admit.

**IV. CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant Adam Pacheo's Motion to Dismiss (ECF No. 117) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Adam Pacheco's Motion to Admit (ECF No. 157) is **DENIED.**

**IT IS FURTHER ORDERED** that the Government's Motion to Strike (ECF No. 155) is **GRANTED.**

DATED: May 2, 2024.



**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court heard testimony from Mesnick and Schaefer regarding Schaefer's conduct; reviewed the documentary evidence submitted at the hearing, including the communications between Schaefer and Mesnick as well as Schaefer's written reports; it has requested and received the unredacted relevant sections of the IRS manual, and the parties have identified the sections of the manual which purport to further their position.